J-A29039-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: L.'A. E. W., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.R.W., FATHER | : : : : : : : : | |
| | : | No. 752 WDA 2023 |

Appeal from the Decree Entered May 30, 2023
In the Court of Common Pleas of Erie County
Orphans' Court at No. 8C in Adoption 2023

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                **FILED: DECEMBER 19, 2023**

L.R.W. (Father) appeals from the decree terminating his parental rights to L.'A. E. W. (Child).  In addition, Father's counsel (Counsel) has filed an **Anders**[1] brief and petition for leave to withdraw from representation.  For the following reasons, we affirm the decree and grant Counsel's petition to withdraw.

### Case History

Child was born in October 2010.  On or about March 4, 2022, the Erie County Office of Children and Youth (Agency) sought emergency custody of Child and her half-siblings, who were living with A.L.R. (Mother).[2]  The children

---

[1] **Anders v. California**, 386 U.S. 738 (1967).

[2] Mother has voluntarily relinquished her parental rights to Child.

were removed from Mother's home. On March 17, 2022, the court held a dependency hearing. Pertinently, Father stipulated he

> had not been in a caregiving role for [Child]; …
>
> had not ensured [C]hild's educational needs were being met. During the 2020/2021 school year, [C]hild had missed 17 days of school, and;
>
> [Father]'s whereabouts were unknown, and Agency attempts to make contact with him were unsuccessful. It was unknown how much contact he had with [C]hild.

Orphans' Court Opinion, 7/25/23, at 1-2 (citing Adjudication and Disposition Order, 3/25/22).

The juvenile court adjudicated Child dependent. Accordingly, the court ordered Father to:

> 1. Obtain and/or maintain safe and stable housing that is appropriate for [Child];
>
> 2. Obtain and/or maintain employment or another appropriate source of income and provide proof to the Agency;
>
> 3. Participate in the Family Reunification Program and demonstrate the skills learned to ensure [Child]'s basic needs are met, and;
>
> 4. Maintain contact with the Agency and sign all releases upon request.

*Id.* at 2.

The orphans' court explained:

> The first Permanency Review Hearing was held on June 24, 2022. [Father] was present and represented by [Counsel]. The Court Summary was provided to all parties before the hearing and admitted into the record without objection. The record reflects that [Child] was placed in the kinship home of her maternal aunt

with one of her siblings. The other siblings were placed in a nearby kinship [home] with another maternal aunt. [Child] was reportedly doing well in the kinship home, and there were no further truancy concerns.

[Father] was reported to have done well during the review period. Specifically, the Agency set forth that [Father] had attended a mental health assessment in which no further care was recommended; participated in an intake appointment with Family Reunification; signed all releases; and provided proof of his income through Social Security. [Father]'s housing, although stable, remained a barrier to reunification as it was one bedroom and did not provide space for a twelve-year-old child. The [c]ourt found that during the first review period, [Father] had been substantially compliant with his treatment plan and had made substantial progress toward alleviating the circumstances that necessitated [Child]'s placement. [Child]'s permanency goal was reunification concurrent with adoption….

The second Permanency Review Hearing was held on December 7, 2022. [**Father**] **did not attend this hearing**. [Counsel] was present on his behalf. Again, the Court Summary was provided to all parties in advance and made part of the record without objection.

The Summary reflects that [Child] continued doing well in the kinship home during the review period. However, [Father]'s compliance with his treatment plan had gone significantly downhill. [Father] was reported to have gone to Florida to assist family during the review period without notifying his case worker[, and] more importantly, [C]hild. The Court Summary reflects that through Family Reunification, [Father] and [Child] had started with virtual visits and moved to in-person visits in the community. [Father]'s unexplained absence caused [Child] to become "uncomfortable with having [visits] and unsure of wanting to continue to build a relationship with him." [Child] reported feeling abandoned by [Father].

Additionally, it was reported [Father] had no contact with his caseworker or Family Reunification worker since September 20, 2022, and had failed to attend scheduled meetings in October and December. Therefore, the [c]ourt found [Father] had no compliance with his treatment plan and made no progress in alleviating the circumstances that led to the original placement.

For those reasons, the [c]ourt granted the Agency's request to change [Child]'s permanency goal to Adoption concurrent with Permanent Legal Custodianship ("PLC"). Additionally, the [c]ourt ordered the Agency to no longer offer services to [Father].

On March 8, 2023, the Agency filed the petition to terminate [Father]'s parental rights under 23 Pa.C.S.A. § 2511 (a)(1),(2),(5)(8), and (b). A [hearing] was scheduled for April 11, 2023; however, due to a [conflict], [Counsel] requested a continuance on behalf of [Father], which the [c]ourt granted.

The [termination hearing] was held on May 30, 2023. [Counsel] represented [Father]; however, he did not appear for the proceeding. [Counsel] told the [c]ourt the last contact she had contact with [Father] was after the first Permanency Review Hearing in June of 2022. Attorney Kevin Jennings ("Attorney Jennings") represented the Agency, and Attorney Steven George appeared as legal counsel for [Child]. … The [orphans' c]ourt heard testimony from Agency caseworker, Kayla Stewart ("Ms. Stewart").

\*\*\*

At the close of the [termination hearing], the [orphans' c]ourt sought the position of Attorney George. Attorney George, acting as legal counsel for [Child,] stated he was in agreement with the Agency and believed the termination of [Father]'s parental rights was in [Child]'s best interest. On behalf of [Child,] [Attorney George] stated

> I would advocate that the [c]ourt … terminate rights. [Child] had some conflicted feelings regarding adoption, but those entirely related to [M]other and the relationship she had with [M]other. Those all sort of became moot once [Mother] voluntarily relinquished and the [c]ourt terminated [Mother's parental rights]. [Child] loves her [placement with her maternal aunt] and is doing well, so I would advocate that the [c]ourt terminate rights here.

Orphans' Court Opinion, 7/25/23, at 2-6 (record citations and footnote omitted).

The orphans' court found the Agency demonstrated clear and convincing evidence to support termination. By decree entered May 30, 2023, the court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). Counsel subsequently filed a timely notice appeal on Father's behalf, and a statement of intent to file an *Anders* brief.

On September 5, 2023, Counsel filed a petition to withdraw and *Anders* brief in this Court. We first address the *Anders* issue. *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (*quoting Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997)); *see also In re V.E.*, 611 A.2d 1267 (Pa. Super. 1992) (extending *Anders* provisions to appeals from involuntary termination decrees).

To withdraw pursuant to *Anders*, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (*citing Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)). As to counsel's duty to inform an appellant of his rights in light of counsel's proposed withdrawal, this Court has held that counsel must "attach

to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

> Additionally, an ***Anders*** brief must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009).

Here, Counsel states that she conducted a thorough and conscientious examination of the record, and concludes that Father's appeal is frivolous. Counsel also avers that she mailed Father a letter explaining his rights, and has attached a copy of the letter to the petition to withdraw and ***Anders*** brief. Counsel's letter complies with the law, as it informs Father he may retain new counsel or proceed *pro se* and raise any additional claims he deems worthy of attention. In addition, Counsel's ***Anders*** brief summarizes the facts and procedural history, includes issues which could arguably support Father's appeal, and Counsel's assessment of why the issues are frivolous, with citations to the record and relevant legal authority. As Counsel has complied with ***Anders***, we review the issues presented in the ***Anders*** brief. We also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." ***Commonwealth v.***

*Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015); *see also Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*) (describing our duty as a "simple review of the record to ascertain if there appears ... to be arguably meritorious issues that counsel, intentionally or not, missed or misstated").

> Counsel identifies the following issues:
>
> A. WHETHER THE ORPHANS' COURT COMMITTED AN ERROR OF LAW AND/OR ABUSED ITS DISCRETION WHEN IT CONCLUDED THAT TERMINATION OF PARENTAL RIGHTS WAS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE PURSUANT TO 23 Pa.C.S.A. § 2511(a)(1),(2),(5), & (8)?
>
> B. WHETHER THE ORPHANS' COURT COMMITTED AN ERROR OF LAW AND/OR ABUSED ITS DISCRETION WHEN IT CONCLUDED THAT TERMINATION OF PARENTAL RIGHTS WAS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE PURSUANT TO 23 Pa.C.S.A. § 2511(b)?

*Anders* Brief at 3 (unnumbered).[3]

Our standard of review is settled. "In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence." *In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. *Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial

---

[3] We have assigned numbers to the corresponding pages of the *Anders* Brief for future reference.

court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." *In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021). "[A]n abuse of discretion does not result merely because the reviewing court might have reached a different conclusion" or "the facts could support an opposite result." *In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012). This Court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* at 826. We defer to the trial courts, which observe the parties first-hand and often in multiple hearings. *S.K.L.R.*, 256 A.3d at 1123-24.

Termination of parental rights is governed by Section 2511 of the Adoption Act, which provides for a bifurcated analysis. First, the orphans' court "must focus on the parent's conduct" relative to the "eleven enumerated grounds" for termination set forth in 23 Pa.C.S.A. § 2511(a)(1)-(11). *Interest of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022). If the court finds grounds for termination under Section 2511(a), it must then assesses the evidence relative to the child's needs and welfare under Section 2511(b), "giving primary consideration to the developmental, physical and emotional needs and welfare of the child." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). This Court need only agree with the orphans' court as to "any one subsection of [Section] 2511(a), in addition to [Section] 2511(b), in order to affirm the termination of parental rights." *Id.*

<u>Section 2511(a) - Grounds for Termination</u>

In his first issue, Father argues the Agency "failed to establish grounds for termination of his parental rights to [Child] by clear and convincing evidence as it pertains to Section 2511(a)(1), (2), (5) & (8)."[4] ***Anders*** Brief at 8. As we need only agree with the orphans' court as to one subsection of Section 2511(a), we address subsection (1), which provides for termination of parental rights when

> [t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child **or** has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1) (emphasis added).

Pertinently, "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." ***In re Z.S.W.***, 946 A.2d 726, 730 (Pa. Super. 2008) (citation omitted). The Pennsylvania Supreme Court has explained:

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child <u>and</u> refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the

---

[4] The Agency has not filed a brief and advised it "would join in the well-reasoned opinion of the Trial Court and ask that the Order be affirmed." Letter, 10/16/23.

parent either demonstrates a settled purpose of relinquishing parental claim to a child <u>or</u> fails to perform parental duties.

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998) (underline in original, citation omitted).

Father claims "the record fails to show [Father] displayed conduct continuing for a period of at least six months immediately preceding the filing of the termination petition [which] evidenced a settled purpose of relinquishing parental claim[, or that Father] refused or failed to perform parental duties." *Anders* Brief at 9. We disagree.

The Agency filed the termination petition on March 8, 2023. The Agency caseworker, Ms. Stewart, testified that in June 2022, Father had "made some progress, **but not enough to care for**" **Child**. N.T., 5/30/23, at 6 (emphasis added). Father's housing was not appropriate, as he only had one bedroom. *Id.* at 7. In addition, Father "had just begun [a program for] family reunification." *Id.* Ms. Stewart further explained that after the June 2022 review hearing, Father

> started some visits with [Child, because Father] and [Child] did not have a working relationship, so they were being reintroduced … to each other very slowly. At some point in the fall, [Father] left. He did not notify the Agency or [the family reunification worker]. He was gone for about a month without any contact. After we were able to make contact with him, he reported he went to Florida to help care for his sister and his nephews.

*Id.* at 7-8.

Ms. Stewart testified that Father returned to Pennsylvania in October 2022, but failed to resume his treatment plan or his relationship with Child.

*Id.* at 8. Father did not attend the December 2022 review hearing. *Id.* Ms. Stewart stated that Father was "not in any different position with [C]hild than he was at the time [Child] was removed [from care]." *Id.* at 10. According to Ms. Stewart, Child did not look to Father to meet her needs and did not have a "father-daughter" relationship with him. *Id.* at 12.

Father did not appear at the termination hearing. After Ms. Stewart testified, the orphans' court asked Father's counsel whether she had "anything to present?" *Id.* at 13. Father's counsel replied:

> [COUNSEL]: No, Your Honor. I've had no contact from my client since – not the last hearing, but the one before that. Even after[,] as Ms. Stewart just testified [about advising] him to reach out to me, I didn't receive any information from him.
>
> THE COURT: Still nothing?
>
> [COUNSEL]: Still nothing.

*Id.*

Next, Child's legal counsel stated that he "would advocate that the [orphans' c]ourt … terminate rights." *Id.* at 14.

On this record, the orphans' court concluded:

> I'm in agreement [with termination] based on the history of this case, [and] the lack of [F]ather's complete participation. Although he came around for a little bit, he then kind of fell off, and it's very clear that he can't … parent this child.

*Id.*

The orphans' court subsequently explained:

> Early on, [Father] demonstrated a willingness to reunify with [Child] and began working toward that goal. However,

[Father] was unable to remain consistent. At some point in the fall of 2022, [Father] left the state for a month without notifying anyone of his absence, including [Child]. In fact, [Father] just stopped contact altogether for approximately one month. [Father]'s conduct negatively affected [Child], and she resisted further contact with him.

From September 2022 until the Permanency Review Hearing on December 7, 2022, [Father] had no contact with [the caseworker,] Ms. Stewart[,] or his Family Reunification worker[,] and essentially did nothing to demonstrate that he had alleviated the circumstances that led to [Child]'s placement. These actions and his failure to appear for his December Permanency Review Hearing or the [termination hearing] demonstrated … that [Father] was unable or unwilling to work his treatment plan.

Orphans' Court Opinion, 7/25/23, at 8.

Our review reveals no abuse of discretion or error by the orphans' court in finding that Father failed to perform parental duties for at least six months prior to the filing the termination petition in March 2023. Thus, Father's challenge to termination under Section 2511(a)(1) is without merit.

Section 2511(b) – Needs and Welfare

In his second issue, Father claims the orphans' court erred in terminating his parental rights under 23 Pa.C.S.A. § 2511(b).

When the court finds grounds for termination under Section 2511(a), it must separately consider a child's needs and welfare. The court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). "Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for

- 12 -

the parent." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023).

Courts must also "discern the nature and status of the parent-child bond, with

utmost attention to the effect on the child of permanently severing that bond."

*Id.* (citation omitted). However,

> the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. Importantly, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship.

*In re A.H.*, 247 A.3d 439, 444–45 (Pa. Super. 2021) (citations omitted).

Our Supreme Court recently affirmed that "the parental bond is but one

part of the overall subsection (b) analysis." *K.T.*, 296 A.3d at 1113. Courts

must also consider factors such as: (1) the child's need for permanency and

length of time in foster care; (2) whether the child is in a pre-adoptive home

and bonded with foster parents; and (3) whether the foster home meets the

child's needs. *Id.* It bears repeating that "intangibles such as love, comfort,

security, and stability" are relevant to a child's needs and welfare. *See id.* at

1096, 1098, 1106, 1109, 1111 (citations omitted).

Father claims "the record fails to support that it is in the best interest of

[C]hild to terminate the rights of [Father]." *Anders* Brief at 14. Father argues

> he was substantially compliant with the treatment plan ordered by the juvenile court when an unplanned and untimely family member fell ill in Florida that necessitated his departure. Upon [Father's] return to Erie County, [Father] immediately attempted to resume services and visitation with [C]hild. [Father] argues that throughout the history of this case, he was working towards reunification with [C]hild and attempting compliance with his treatment plan. Further, [Father] argues that a bond did exist

with [C]hild and that bond was getting stronger as visitation increased and participation in family reunification persisted.

*Id.* at 14-15. This argument is not persuasive as it is belied by the record.

The Agency caseworker, Ms. Stewart, testified that in 2022, Father and Child "did not have a working relationship, so they were being reintroduced … very slowly." N.T., 5/30/23, at 7. When Father left Pennsylvania without telling Child or the Agency, Child "felt abandoned." *Id.* at 8. Ms. Stewart stated it "was a struggle to even attempt to get [Child] to reengage with [Father] because she was that upset and hurt that he just left." *Id.* According to Ms. Stewart, Father had last seen Child in the summer of 2022. *Id.* at 9.

In addition, Ms. Stewart described Child as doing "great" in her placement with her maternal aunt, who meets all of Child's needs. *Id.* Ms. Stewart stated:

> [Child is] attending school regularly. She's in therapy weekly. She's thriving. She appears to be a very happy and appropriate 12-year-old.

*Id.*

Ms. Stewart opined that termination of Father's parental rights would be in Child's best interest and would not have a negative impact on Child. *Id.* at 10. Further, Child's legal counsel indicated that termination was in Child's best interest, and expressed that Child "loves" her aunt and "is doing well." *Id.* at 14.

Consistent with the foregoing testimony, the orphans' court stated, "I do find that it is in [Child's] best interest" that Father's "rights be terminated."

N.T., 5/30/23, at 15; **see also** Orphans' Court Opinion, 7/25/23, at 9 (orphans' court stating, "the testimony established that termination of [Father's] parental rights is in [Child's] best interest."). Our review reveals no abuse of discretion or error by the orphans' court in terminating Father's parental rights pursuant to Section 2511(b).

Finally, our independent review of the record reveals no non-frivolous issues for challenging the orphans' court's termination of Father's parental rights. We therefore affirm the decree and grant counsel's petition to withdraw.

Decree affirmed. Petition to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/19/2023